Filed 3/4/24  P. v. Banks CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C097446 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF21-890) |
| v. | |
| RORY MICHAEL BANKS, | |
| Defendant and Appellant. | |

Defendant Rory Michael Banks was charged with murder and burglary, and he pled both not guilty and not guilty by reason of insanity.  The jury found him guilty on both counts and legally sane.  The trial court sentenced him to a total term of 60 years to life and imposed $10,180 in fines and fees.  Defendant argues the prosecutor committed error during closing argument in the sanity phase of the trial when he stated defendant "is now a convicted murderer and is presumed to have been sane at the time."  He also

1

argues his sentence violates Penal Code sections 654 and 1385, subdivision (c)(2)(B).[1] Finally, he argues the fines and fees violate due process because they were imposed without determining his ability to pay. We disagree with all of defendant's arguments and thus affirm the judgment in full.

## BACKGROUND

Given the arguments defendant makes on appeal, the underlying facts of the crimes are largely irrelevant. It is sufficient simply to note the following: "[Defendant], who suffers from delusional personality disorder, became influenced by conspiracy theories from the 'alt-right' QAnon group. Believing the need to rid his community of child molesters, [he] broke into the home of a convicted child molester [Ralph Mendez] and killed him. A jury found [him] guilty of premeditated murder and burglary, and then found him legally sane."

## DISCUSSION

*A.     Prosecutorial Error During Closing Argument*

During closing argument in the sanity phase of the trial, the prosecutor stated, "Defendant is now a convicted murderer and is presumed to have been sane at the time." Defendant argues this misstates the law and constitutes prosecutorial misconduct or error.[2] Even if we assume it misstates the law, we find no error.

"Where, as here, the prosecutor is alleged to have misstated the law to the jury, this constitutes error only if (1) the prosecutor misstated the law, and (2) there is ' "a reasonable likelihood the jury understood or applied the [prosecutor's remarks] in an

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     Our Supreme Court has explained "the term prosecutorial '*misconduct*' is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind. A more apt description of the transgression is prosecutorial *error*." (*People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1, italics added.)

improper or erroneous manner." [Citations.]' [Citations.] Although we generally review claims of prosecutorial error for an abuse of discretion [citation], we independently examine what the law is [citation] and 'objective[ly]' examine how a 'reasonable juror' would likely interpret the prosecutor's remarks [citations], bearing in mind that ' "we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. [Citation.]" ' " (*People v. Collins* (2021) 65 Cal.App.5th 333, 340.) "To find prosecutorial error, we must view the challenged statement in the context of the entire argument and the jury instructions to determine whether there was a reasonable likelihood the jury understood or applied the comments in an improper or erroneous manner." (*People v. Meneses* (2019) 41 Cal.App.5th 63, 74.)

Here, in context, is what the prosecutor said, along with defendant's objection and the court's response:

> PROSECUTOR: "Some key difference[s] from the guilt phase, some of what [defense counsel] touched on, *Defendant is now a convicted murderer and is presumed to have been sane at the time*. The burden of proof is on the Defendant. This is a weird place. Defense attorneys don't usually have the burden of proof and prosecutors don't usually argue second.

> "[DEFENSE COUNSEL]: I'm going to just make an objection, a legal objection, as — as the presumption that he is sane at this time, that that is the presumption, like a presumption of innocence, I don't believe is a proper statement of the law. And I object as a mischaracterization.

> "THE COURT: The burden is on the Defendant to prove his sanity. To the extent that either counsel make statements about the law that conflict with this Court's instructions, the jury is to follow my instructions." (Italics added.)

As defendant notes, he was not (yet) a convicted murderer. He had been found guilty of murder in the first phase of the trial, but if the jury found him not guilty by reason of insanity in the second phrase, he would not be a convicted murderer. (See

*People v. Morrison* (1984) 162 Cal.App.3d 995, 998 [finding of "not guilty by reason of insanity . . . is not a conviction"].) As this court stated almost a century ago, "It would require a peculiar process of reasoning to reach the conclusion that a defendant who was finally found not guilty by reason of insanity of a kind which rendered him incapable of committing the crime with which he was charged was nevertheless convicted of that crime." (*In re Application of Merwin* (1930) 108 Cal.App. 31, 32.) Saying defendant is "now a convicted murderer" thus misstates the law.

We are not convinced, however, that the prosecutor misstated the law when he said defendant "is presumed to have been sane at the time" of the murder. Where a defendant pleads both not guilty of the charged crimes, and not guilty by reason of insanity, "the court conducts a bifurcated trial and the issues of guilt and sanity are separately tried. [Citations.] In the first phase of trial, the defendant is tried on his or her factual guilt without reference to the insanity plea. If the defendant is found guilty, he or she receives a second jury trial in which his or her legal sanity is determined." (*People v. Dobson* (2008) 161 Cal.App.4th 1422, 1431.) This court has previously held that, during the sanity phase of a bifurcated trial, "even if the jury was directed to 'assume' the defendant was sane, this assumption is subject to defendant presenting evidence to prove otherwise. *An assumption of sanity*, like an assumption of innocence, *is just another way of saying the burden is on the party claiming otherwise to prove it*." (*People v. Thomas* (2007) 156 Cal.App.4th 304, 310-311, italics added.) As defendant acknowledges, a criminal defendant "bears the burden of proving insanity during the sanity phase" of a bifurcated trial. (§ 25, subd. (b) [the defendant has burden of proving insanity].) Defendant thus fails to convince us that the prosecutor misstated the law when he said defendant is presumed sane, because that is just another way of saying defendant has the burden of proving otherwise. Moreover, defendant fails to explain how the prosecutor's statement somehow "elevated [defendant's] burden of proof in a way that made it more difficult for [him] to prove insanity."

4

Having determined the prosecutor misstated the law, at least in the first instance, does not end the inquiry, because, as noted above, the prosecutor's misstatement only constitutes error if "there is ' "a reasonable likelihood the jury understood or applied the [prosecutor's remarks] in an improper or erroneous manner." ' " (*People v. Collins, supra*, 65 Cal.App.5th at p. 340.) In determining whether there is a reasonable likelihood the jury applied the statement in an improper manner, the trial court's "comments and instruction to the jury" may "sufficiently dissipate[]" any "possible prejudicial implication drawn from" the misstatements. (*People v. Hughey* (1987) 194 Cal.App.3d 1383, 1396.) "We presume the jury followed the court's instructions, rather than any conflicting comment by counsel, in reaching a verdict. [Citations.] ' "[J]uries generally understand that counsel's assertions are the 'statements of advocates.' " ' " (*People v. Meneses, supra*, 41 Cal.App.5th at p. 75.)

Here, as soon as defendant objected that the prosecutor misstated the law, the trial court admonished the jury, "To the extent that either counsel make statements about the law that conflict with this Court's instructions, the jury is to follow my instructions." Moreover, prior to closing arguments, the trial court verbally instructed the jury, "If you believe that the attorneys' comments on the law conflicts with my instructions, you must follow my instructions." Finally, the jury was given a written copy of all instructions, including CALCRIM No. 200, which states, "If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." The jury was thus told three times that if there was a conflict between the attorneys' statements about the law and the jury instructions, it had to follow the instructions.

The jury was also given CALCRIM No. 3450, which instructs on insanity. In particular, it instructs "defendant must prove that it is more likely than not that he was legally insane when he committed the crime," and, "If, after considering all the evidence, all twelve of you conclude the defendant has proved that it is more likely than not that he was legally insane when he committed the crime, you must return a verdict of not guilty

5

by reason of insanity." (See § 25, subd. (b) [the defendant has burden of proving insanity by a preponderance of the evidence]; *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1305, fn. 28 [preponderance of the evidence means " 'more likely than not' "].) Defendant does not suggest CALCRIM No. 3450 is incorrect in any way, and "[w]e presume the jury followed" it. (*People v. Chism* (2014) 58 Cal.4th 1266, 1299.)

Thus, when we view the prosecutor's statement alongside the court's comments and the jury instructions, we find it is not reasonably likely the jury understood or applied the statement in an improper or erroneous manner. We therefore conclude there was no error. (*People v. Meneses, supra*, 41 Cal.App.5th at p. 73.)

B.      *Section 654*

The jury found defendant guilty of the murder of Ralph Mendez and of burglary, with Mendez's mother, Victoria M., named as the burglary victim. The jury also found true the allegation that defendant personally used a firearm in the commission of each offense. The trial court sentenced him to 25 years to life on the murder count, with a consecutive 25 years for the firearm enhancement; and to six years on the burglary count, with an additional four years for the firearm enhancement. Defendant argues consecutive sentences on both the murder and the burglary counts violates section 654's prohibition against multiple punishments for a single act. The trial court found the "multiple victim" exception to section 654 applies, and we agree with the trial court.

Section 654 provides, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) This provision "bars the imposition of multiple sentences for a single act or omission, even though the act or omission may violate more than one provision of the Penal Code." (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1413.) "Section 654 has long been interpreted to preclude multiple punishments not only for a single act that

6

violates more than one statute, but for *an indivisible course of conduct*. [Citation.] . . . [Citation.] '[I]f all of the offenses were merely incident to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once.' " (*People v. Mejia* (2017) 9 Cal.App.5th 1036, 1042-1043.) "On appeal, we review factual determinations under the deferential substantial evidence test, viewing the evidence in the light most favorable to the People. [Citation.] We review de novo the legal question of whether section 654 applies." (*People v. Valli* (2010) 187 Cal.App.4th 786, 794.)

Defendant argues the murder and the burglary were part of an indivisible course of conduct because "the burglary was part and parcel of the murder, and the only purpose of the burglary was to facilitate the murder of Mendez." "Burglary consists of entry into a house . . . with the intent to commit a felony. [Citation.] Thus, ordinarily, if the defendant commits both burglary and the underlying intended felony, Penal Code section 654 will permit punishment for one or the other but not for both." (*People v. Centers* (1999) 73 Cal.App.4th 84, 98; see also *People v. Islas* (2012) 210 Cal.App.4th 116, 130 ["When a defendant is convicted of burglary and the intended felony underlying the burglary, section 654 prohibits punishment for both crimes"].) Defendant argues the only felony he intended to commit when he entered the house was murder, and section 654 thus prohibits punishment for both burglary and murder.

The trial court found the "multiple victim" exception to section 654 applies, and the People argue that finding is both supported by the evidence and legally sound. We agree. Under the multiple victim exception, " ' "even though a defendant entertains but a single principal objective during an indivisible course of conduct, *he may be convicted and punished for each crime of violence committed against a different victim*." ' " (*People v. Centers, supra*, 73 Cal.App.4th at p. 99, italics added.) Murder obviously qualifies as a crime of violence, and Mendez was the only victim of that crime. "Burglary, standing alone, is not a violent crime for purposes of the multiple victim

7

exception." (*Ibid.*) However, it "may be treated as such when there is a finding that the defendant personally used a firearm in the commission of the burglary." (*Ibid.*) Here, the jury found defendant personally used a firearm in the commission of the burglary, thus making it a violent crime for purposes of the multiple victim exception.

Defendant argues Mendez was the only victim of the burglary. The trial court found otherwise. In particular, it found Victoria M., Mendez's mother, was a "separate victim" of the burglary. We agree. Victoria was present in the home when her son was shot, and she testified that, after shooting Mendez, defendant put his gun to her back and asked her where the phone was. In the information, it was alleged in support of the burglary count that defendant "did enter an inhabited dwelling house occupied by Victoria M., with the intent to commit any felony." It was further alleged the burglary was "a violent felony within the meaning of Penal Code section 667.5[, subdivision ](c)(21) in that . . . Victoria M. . . . was present in the residence during [its] commission."[3] The jury found defendant guilty of burglary, and also found true the allegation that Victoria M. was present in the residence during the commission of the burglary. The information also alleged numerous aggravating factors, including "as to count 2 that the victim (Victoria M.) was particularly vulnerable, within the meaning of California Rules of Court Rule 4.421(a)(3)," and defendant admitted all aggravating factors. The evidence at trial, along with the allegations in the burglary count and the aggravating factors, all support the trial court's finding that Victoria was also a victim of the burglary. And because there were different victims of each violent crime, section 654 does not preclude multiple sentences.

---

[3]     Section 667.5 provides " 'violent felony' " includes "[a]ny burglary of the first degree . . . wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." (§ 667.5, subd. (c)(21).)

8

Defendant disagrees. He notes the jury was instructed that, to find him guilty of burglary, the People had to prove (1) he entered a building, (2) when he entered the building, he intended to commit murder, and (3) the building he entered was noncommercial. Because Mendez was the only person he intended to murder, he argues Mendez is also the only victim of the burglary. We disagree. Although it may be true that defendant entered the house intending to murder Mendez, it is also true that he used a firearm *on Victoria* in the commission of the burglary, and, as found by the jury, it was Victoria's presence in the house that made the burglary a violent felony.

*People v. Centers, supra*, 73 Cal.App.4th 84 is instructive in this regard. There, the defendant was found guilty of burglary and kidnapping, and was also found to have used a firearm during the commission of both crimes, which made them violent for purposes of the multiple victim exception. (*Id*. at pp. 90, 98, 100.) The evidence showed Daniel Raines owed the defendant $200. On the day of the crimes, Raines was staying at a friend's house; Jennifer Grundman, who lived there, and a man named Rick were also present. (*Id*. at pp. 88-89.) The defendant entered the house holding a gun, pointed it at Raines and said, " 'You're coming with me. You're going to pay your debt.' " (*Id*. at p. 89.) Rick tried to intervene, and the defendant pointed the gun at him and asked if he was willing to " 'take a bullet' " for Raines. (*Ibid*.) The defendant took Raines by the arm, led him to a waiting car, and proceeded to drive him around and try to get his money until the police intervened. (*Id*. at pp. 89-90.) The defendant argued the trial court violated section 654 by imposing separate and unstayed sentences for both crimes, citing the general rule that "if the defendant commits both burglary and the underlying intended felony, Penal Code section 654 will permit punishment for one or the other but not for both." (*Id*. at p. 98.) The appellate court disagreed, finding the multiple victim exception applied. It first noted "Raines was indubitably the victim of the kidnapping." (*Id*. at p. 101.) It then found Grundman was a victim of the burglary (even though she was not the only victim), because (1) she lived in the house and the burglary statute protects a

9

person's possessory right in property, and (2) she was a victim of the defendant's "menacing display of a firearm during the burglary." (*Id.* at p. 102; see *id.* at pp. 101-102.) The court noted the information did not allege, and the jury thus did not find, that any particular person was the victim of either the burglary or the related personal firearm use enhancement (*id.* at p. 101), and there was sufficient evidence to support the trial court's implied finding that "there was at least one victim of the burglary and the personal firearm use who was not also a victim of the kidnapping" (*id.* at p. 102).

So, too, in this case. There is at least one victim of the burglary and the related personal firearm use enhancement (i.e., Victoria) who was not also a victim of the murder. And we note that (unlike in *Centers*) the information in this case *does* identify Victoria as a potential victim of the burglary because it alleges (1) defendant "did enter an inhabited dwelling house occupied by Victoria M," (2) "the [burglary] is a violent felony within the meaning of Penal Code 667.5[, subdivision ](c)(21) in that another person (Victoria M.) . . . was present in the residence during the commission of the above offense," and (3) "as to count 2 [i.e., the burglary count] . . . the victim (Victoria M.) was particularly vulnerable." All these allegations were either found true by the jury or admitted by defendant. As in *Centers*, there was at least one victim of the burglary who was not also a victim of the murder, and the trial court thus did not err in imposing consecutive sentences for both counts.

C.      *Section 1385, Subdivision (c)(2)(B)*

The murder count and the burglary count both alleged an enhancement for personal use of a firearm, the jury found both enhancements true, and the trial court imposed a separate sentence for each enhancement. Defendant argues the plain language of section 1385, subdivision (c)(2)(B) required the court to dismiss all enhancements beyond a single enhancement. We disagree.

Defendant's argument raises a pure issue of statutory construction, which we review de novo. (*John v. Superior Court* (2016) 63 Cal.4th 91, 95.) Section 1385,

10

subdivision (a), provides, "The judge . . . may . . . in furtherance of justice, order an action to be dismissed," and it has long been held that "the power to dismiss an 'action' under section 1385 includes the power to dismiss or strike an enhancement." (*People v. Thomas* (1992) 4 Cal.4th 206, 209.) In 2021, the Legislature "amended section 1385 to specify factors that the trial court must consider when deciding whether to [dismiss or] strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.) As amended, subdivision (c)(1) of section 1385 provides in relevant part, "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so." And subdivision (c)(2) provides in relevant part: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of *the mitigating circumstances in subparagraphs (A) to (I) are present*. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (Italics added.) The mitigating circumstance at issue in this case is contained in subparagraph (B): "Multiple enhancements are alleged in a single case. *In this instance, all enhancements beyond a single enhancement shall be dismissed*." (§ 1385, subd. (c)(2)(B), italics added.) Defendant interprets the italicized language to mean that, in any case where multiple enhancements are alleged, the court is *required* to dismiss all enhancements beyond a single enhancement. Again, we disagree.

Subdivision (c)(1) and (2) of section 1385 both refer to the sentencing court's discretion in determining whether to dismiss an enhancement. Subdivision (c)(1) provides the sentencing court must dismiss an enhancement "if it is in the furtherance of justice to do so," which accords the court general discretion to determine whether dismissal is in the furtherance of justice. Subdivision (c)(2) then expressly states, "*In exercising its discretion under this subdivision*, the court shall consider and afford great weight to evidence" (italics added), showing "any of the mitigating circumstances in

11

subparagraphs (A) to (I) are present," and it adds, "[p]roof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." One of those mitigating circumstances—i.e., that "[m]ultiple enhancements are alleged in a single case"—is at issue here. (§ 1385, subd. (c)(2)(B).) Read together, this language directs the trial court to "afford great weight" to the fact that multiple enhancements are alleged in a single case when "exercising its discretion" in deciding whether to dismiss an enhancement, but it does not require the court to dismiss all enhancements beyond a single enhancement in any case in which multiple enhancements are alleged.

We thus interpret section 1385, subdivision (c)(2)(B) the same way that every case that has considered the issue has interpreted it, and we hold the trial court retains discretion not to dismiss all enhancements beyond a single enhancement in a case where multiple enhancements are alleged if it determines dismissing the enhancements is not in furtherance of justice or would endanger public safety. (See *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1093 ["the specification of mandatory factors did not displace the trial court's obligation to exercise discretion in assessing whether dismissal is 'in furtherance of justice' "], review granted Apr. 12, 2023, S278894; *People v. Anderson* (2023) 88 Cal.App.5th 233, 239 ["This language, taken together, explicitly and unambiguously establishes: the trial court has discretion to dismiss sentencing enhancements; certain circumstances weigh greatly in favor of dismissal; and a finding of danger to public safety can overcome the circumstances in favor of dismissal"], review granted Apr. 19, 2023, S278786; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 18 [under § 1385 as amended, "the trial court retains discretion to impose the enhancement where failing to do so would endanger public safety"]; *People v. Walker* (2022) 86 Cal.App.5th 386, 391 ["[D]oes the mitigating circumstance that exists when there are '[m]ultiple enhancements . . . in a single case' and specifies that 'all enhancements beyond a single enhancement shall be dismissed' require the court to dismiss all but one of those

12

enhancements in every case with multiple enhancements?  We concluded that answer is 'no' "], review granted Mar. 22, 2023, S278309; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 296 ["dismissal is not always required when a mitigating factor that contains 'shall be dismissed' language applies"].)

D.      *Fines and Fees*

At sentencing, the court imposed the following fines and fees:  $10,000 restitution fine; $80 court operations fee; $60 conviction assessment fee; and $40 crime prevention fee.[4]  In *People v. Dueñas* (2019) 30 Cal.App.5th 1157, the court held it violated due process to impose court fees without a determination of the defendant's ability to pay, and execution of a restitution fine must be stayed until the trial court holds a hearing and concludes the defendant has the present ability to pay the fine.  (*Id.* at pp. 1164, 1168.) Citing *Dueñas*, defendant argues the trial court violated his due process rights by imposing fines and fees without first determining his ability to pay.  He notes "[t]he record does not indicate that [he] has a present ability to pay."  He also notes he qualified for appointed counsel, and he argues qualifying for appointed counsel suggests he does *not* have the ability to pay.

Defendant did not object to the fines or fees in the trial court on the ground he now urges on appeal, and he did not present any evidence in the trial court on his ability to pay.  The People argue he has thus forfeited the issue.  We agree.

"Ordinarily, a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal."  (*In re Sheena K.* (2007) 40 Cal.4th 875, 880.)  This rule applies to alleged sentencing errors, including the imposition of fees and fines.  (*People v. Trujillo* (2015)

---

[4]      It also imposed $3,588.38 in victim restitution pursuant to section 1202.4, subdivision (f).  Defendant does not mention victim restitution, and we thus do not discuss it.

60 Cal.4th 850, 856-861 [the defendant forfeited challenge to booking fee by failing to object in trial court]; *People v. Gamache* (2010) 48 Cal.4th 347, 409 [the defendant forfeited challenge to restitution fine by failing to object in trial court].)  This rule has been applied to the failure to raise a *Dueñas* argument in the trial court.  (See *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1052-1053 [*Dueñas* arguments forfeited by failure to raise in trial court]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1155 [same].)  By failing to raise a *Dueñas* argument at his sentencing hearing, defendant forfeited the right to raise the issue on appeal.

Defendant notes his counsel *did* object to fines and fees, and he argues the objection is sufficient to preserve his current argument on appeal.  We disagree.  The probation department had recommended the restitution fine be set at $18,300, and defense counsel stated, "We would object to that."  The court then asked, "What amount would you suggest?" and defense counsel replied, "Well, restitution amount has been set. I think that just doing a mathematical calculation by years is not appropriate.  So I would leave it to the Court's discretion as to the amount of restitution, but certainly [it] should not be based upon how long a man is imprisoned."  This is the only thing defense counsel said about the imposition of fines or fees.  Although "no particular form of objection is required," the objection "must be made in such a way as to alert the trial court" that defendant claimed fines and fees could not be imposed without first determining his ability to pay.  (*People v. Williams* (1988) 44 Cal.3d 883, 906.)  Defense counsel's objection did not do that.

Moreover, as to the $10,000 restitution fine in particular, section 1202.4 expressly allows the trial court to consider the defendant's ability to pay when imposing a fine above the $300 statutory minimum.  (§ 1202.4, subd. (c).)  Here, the trial court imposed a restitution fine above the statutory minimum, and defendant thus could have objected to that fine based on an inability to pay, but he failed to do so.

Finally, we note that even *People v. Castellano* (2019) 33 Cal.App.5th 485, a case that defendant cites several times in his briefs, held, "Consistent with *Dueñas*, a defendant must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed." (*Id*. at p. 490.) "Given that the defendant is in the best position to know whether he has the ability to pay, it is incumbent on him to object to the fine and demonstrate why it should not be imposed." (*People v. Frandsen, supra*, 33 Cal.App.5th at p. 1154.) By failing to contest his ability to pay the fines and fees imposed, defendant has forfeited the right to raise the issue on appeal.

Defendant argues in the alternative that if we find his *Dueñas* claim was forfeited, then the failure to object in the trial court constituted ineffective assistance of counsel. We disagree. As this court has previously stated, "we join those authorities that have concluded the principles of due process do not require determination of a defendant's present ability to pay before imposing the fines and assessments discussed in *Dueñas*."[5] (*People v. Pack-Ramirez* (2020) 56 Cal.App.5th 851, 860 [citing cases].) This conclusion invalidates defendant's ineffective assistance of counsel claim as well. (See *People v. Kipp* (1998) 18 Cal.4th 349, 377 ["attorney's failure to assert a meritless defense does not demonstrate ineffective assistance of counsel"]; *People v. Ochoa* (1998) 19 Cal.4th 353, 463 ["Representation does not become deficient for failing to make meritless objections"].)

---

[5] Our Supreme Court is poised to resolve the issue, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, to decide the following questions: "Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments? If so, which party bears the burden of proof regarding defendant's inability to pay?"

15

## DISPOSITION

The judgment is affirmed.

                                                      /s/
                                               EARL, P. J.

We concur:

/s/
KRAUSE, J.

/s/
KEITHLEY, J.*

---

\*     Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16